FILED by _____ D.C.
INTAKE

OCT 1 2 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.   MIAMI

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
~~Sealed~~     CASE NO: _____ CIV
_____ / _____

07 - 22710

Unsealed 6/5/09

**COMPLAINT**

**FILED UNDER SEAL - COLD**
**PURSUANT TO**
**31 U.S.C. § 3730(b)(2)**

MAGISTRATE JUDGE

**JURY TRIAL**
**DEMANDED**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.,*<br>GENE KLUSMEIER AND JAQUILINE<br>KLUSMEIER<br>4930 Coconut Boulevard<br>Palm Beach, Florida, 33480<br>                 Plaintiff, | ) ) ) ) ) ) ) |
| BRINGING THIS ACTION ON BEHALF<br>OF THE UNITED STATES OF AMERICA | ) ) ) ) ) |
| UNITED STATES ATTORNEY<br>99 N.E. 4th Street<br>Miami, FL, 33132 | ) ) ) ) ) ) |
| and | ) ) ) |
| ATTORNEY GENERAL OF<br>THE UNITED STATES<br>U.S. Department of Justice<br>10th and Constitution Avenues, N.W.<br>Washington, DC 20530 | ) ) ) ) ) ) ) |
| vs. | ) ) ) |
| ASTALDI CONSTRUCTION CORPORATION<br>8220 W. State Road 84, Suite 300<br>Davie, FL, 33324 | ) ) ) ) |
| LUCAS MARINE CONSTRUCTION COMPANY<br>8565 SE Palm Street<br>Hobe Sound, FL 33455 | ) ) ) ) |
| GULF GROUP INCORPORATED<br>7402 Highway 2302<br>Southport, FL, 32409 | ) ) ) ) |
| BERGERON LAND DEVELOPMENT<br>INCORPORATED, SOUTH | ) ) ) |



19612 SW 69th PL    )
Pembroke Pines, FL, 33332    )
    )
SHAW ENVIRONMENTAL, INCORPORATED    )
4171 Essen Lane    )
Baton Rouge, LA, 70809    )
    )
INTERLAKEN, INCORPORATED    )
1960 South Ocean Blvd    )
Lake Worth, FL, 33462    )
    )
GILBERT SOUTHERN CORPORATION    )
1011 Shotgun Road    )
Sunrise, FL, 33326    )
    )
KIEWIT SOUTHERN CORPORATION    )
13630 NW 8th Street, Suite 225    )
Sunrise, FL, 33325    )
    )
HARRY PEPPER AND ASSOCIATES    )
215 Century 21 Drive    )
Jacksonville, FL, 32216    )
    )
DOUGLAS N. HIGGINS, INCORPORATED    )
3390 Travis Pointe Road, Suite A    )
Ann Arbor, MI, 48108    )
    )
IRONHORSE, LTD    )
2432 Swan St.    )
Jacksonville, FL, 32204    )
    )
ATLANTIC SKANSKA, INCORPORATED    )
2030 Powers Ferry Road, Suite 444    )
Atlanta, GA, 30339    )
    )
ATLANTIC CIVIL, INCORPORATED    )
9350 S. Dixie Highway, Suite 1250    )
Miami, FL, 33156    )
    )
PALM BEACH GRADING, INCORPORATED    )
1250 Gateway Road    )
Lake Park, FL, 33403    )

PALM BEACH AGGREGATE                         )
1000 Southern Blvd., Suite 300               )
West Palm Beach, FL, 33405                   )
                                             )
                    Defendants.              )
_____    )

This is a *qui tam* action under 31 U.S.C. § 3729, *et seq.*, the False Claims Act, and

§ 68.081, *et seq.*, Fla. Stat., the Florida False Claims Act, filed by Relators/Plaintiffs

Gene Klusmeier and Jacqueline Klusmeier, in the name of the United States Government,

the State of Florida and themselves, to recover penalties and damages arising from

Defendants' violations of federal requirements concerning federally funded construction

projects administered at least in part by the Army Corps of Engineers in conjunction with

the South Florida Water Management District.

## JURISDICTION AND VENUE

1.      Plaintiffs, Gene Klusmeier and Jacqueline Klusmeier, hereby allege causes of

        action under 31 U.S.C. § 3729, *et seq.*, the False Claims Act, arising from

        Defendants' claims made to agencies of the United States Government.

2.      The Plaintiffs are the original source of all the allegations contained in this

        Complaint.

3.      There has been no public disclosure of the allegations contained in this

        Complaint.

4.      Pursuant to the requirements of the False Claims Act, 31 U.S.C. § 3729, *et. seq.*,

        the Plaintiffs have provided the government with a confidential disclosure

        statement and exhibits to substantiate their allegations.

5.  Jurisdiction over all stated Federal causes of action is conferred upon this Court by 31 U.S.C. § 3732 and 28 U.S.C. § 1331 in that this action arises under the laws of the United States.

6.  The Defendants are contractors who have caused charges to be billed against the Federal Government through charges against the South Florida Water Management District through contracts administered by the Army Corps of Engineers.

7.  The Defendants all do business in Florida on sites in Florida pursuant to Florida based contracts and most maintain offices in Florida.

8.  Defendant, Astaldi Construction Corporation, of 8220 W. State Road 84, Suite 300, Davie, Florida, 33324, holds contracts including, but not limited to, contracts for Project No. 00673101, the Wetlands Based Water Reclamation Project – Phase II, for at least $8,822,368.02.

9.  Defendant, Lucas Marine Construction Co. also known as LMC Holdings, Inc. of 8565 SE Palm Street, Hobe Sound, Florida, 33455, holds contracts including, but not limited to, contracts for the M-1 Canal Levee for at least $3,019,764.00.

10.  Defendant, Gulf Group, Inc. of 7402 Highway 2302, Southport, Florida, 32409, holds contracts including, but not limited to, contract number CN060040 for STA 2 Cell 4 Expansion Project with South Florida Water Management District. The contract total amount was $18,688,458.40 and was executed on 13 December 2005. The contract's project description states that Gulf Group, Inc. is responsible for many parts of the project, including, but not limited to, "…the construction of approximately 52,000 linear feet of levee."

11.     Defendant, Bergeron Land Development, Inc. South of 19612 SW 69th Pl., Pembroke Pines, Florida, 33332, holds contracts including, but not limited to, contract number C-E208 for the Construction of STA 2 for the amount of $25,258,680.93 and contract number C-E600 for STA 6 – Section 1 Construction for the amount of $1,900,948.00.  While the execution and end dates on these contracts are more than six years old, the Relator directly observed work being conducted on these sites with construction equipment and personnel within the past six years, but is unsure of the specific contract vehicle to which this work was charged.

12.     Defendant, Shaw Environmental, Inc. of 4171 Essen Lane, Baton Rouge, Louisiana, 70809, holds contracts including, but not limited to, contract numbers C-E307 CO307-R4  and C-E307 CO307-R3 for STA 3/4 Interior Work. The total amount of these contracts was $33,456,901.05. The contracts were executed July 20, 2001 and were to end July 30, 2004. Shaw Environmental is a subsidiary of Shaw Group, Inc. which also has offices 2401 PGA Boulevard Palm Beach Gardens, FL  33410.

13.     Defendant, Interlaken, Inc. of 1960 South Ocean Blvd, Lake Worth, Florida, 33462, holds contracts including, but not limited to, Contract Number CN060041 for the STA 5 Flow-Way 3 Project. The total amount of the contract is $12,903,000.00. This contract runs through September 30, 2007.  Interlaken's contract requires conversion of approximately 2,560 Acres of prior agricultural sugar cane farm for use as a wetland treatment system. The Contract's Project Description states, "The work will include, but is not limited to the construction

of canals, levees, flow control structures, degrading of existing roads and berms, and the filling of existing ditches and canals."

14. Defendant, Gilbert Southern Corporation of 1011 Shotgun Road, Sunrise, Florida, 33326, a subsidiary of Kiewit Southern Corporation of 13630 NW 8th Street, Suite 225, Sunrise, Florida, 33325, hold contracts including, but not limited to, contract number C-E503 for STA 5 Construction for an amount of $10,582,796.43. While the execution and end dates on these contracts are more than six years ago, the Relator directly observed workers and construction equipment on this site within the past six years, but is unsure of the specific contract vehicle to which this work was charged.

15. Defendant, Harry Pepper and Associates of 215 Century 21 Drive, Jacksonville, Florida, 32216, holds contracts including, but not limited to, Contract number CN060042 for the STA 6 – Section 2 Construction and Section 1 Modification Project. The total amount of the contract is $23,460,167.00. The contract runs through September 30, 2007. The contract is for creation of an additional stormwater treatment section for STA 6 and states, "The work will include, but is not limited to, the construction of canals, levees, flow control structures, degrading of existing roads and berms, and the filling of existing ditches and canals." Defendant also holds contracts including, but not limited to, contract number C-E107 for the Construction of STA 1W for the amount of $19,006,465.18. While the execution and end dates on these contracts are more than six years old, the Relator while working on an adjacent site personally observed trucks headed to and from this site and personnel and workers on the site

within the past six years but is unsure of the specific contract vehicle to which this work was charged.

16.     Defendant, Douglas N. Higgins, Inc. of 3390 Travis Pointe Road, Suite A, Ann Arbor, Michigan, 48108, holds contracts including, but not limited to, contracts for the Nubbin Slough STA for a total contract amount of $8,863,768.96.

17.     Defendant, Ironhorse, LTD of 2432 Swan St., Jacksonville, Florida, 32204, holds contracts including, but not limited to, contracts for the Grassy Island STA for a total contract amount of $2,872,797.00.

18.     Defendant, Atlantic Skanska, Inc. of 2030 Powers Ferry Road, Suite 444, Atlanta, Georgia, 30339, holds contracts including, but not limited to, contracts for the Ten Mile Creek Water Preserve for a total contract amount of $24,483,039.00.

19.     Defendant, Atlantic Civil, Inc. of 9350 S. Dixie Highway, Suite 1250, Miami, Florida 33156, holds contracts including, but not limited to, contracts for STA 3/4, pump station G-370 and G372 levee.

20.     Defendant, Palm Beach Grading, Inc. of 1250 Gateway Road, Lake Park, Florida, 33403, holds contracts including, but not limited to, contracts for the M-O Canal Levee for a total amount of $2,399,000.00

21.     Defendant, Palm Beach Aggregate of 1000 Southern Blvd., Suite 300, West Palm Beach, Florida, 33405, holds contracts including, but not limited to, contracts for the L-8 Reservoir for a total amount of $217,581,500.00. The construction for this project which is entirely a part of the federally funded effort to improve water quality includes many levees which were to be built according to the

specifications promulgated by the Army Corps and were designed to be able to hold water.

22.　Venue and jurisdiction are proper in the United States District Court, for the Southern District of Florida pursuant to 28 U.S.C. Section 1391(c) and 31 U.S.C. Section 3732 as the Defendants are a group of organizations and persons subject to personal jurisdiction in  the State of Florida.

## I. THE PARTIES INVOLVED

### A.　PLAINTIFF

23.　The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

24.　Plaintiff/Relator Gene H. Klusmeier is vice president of Nu-Way Lawns, Inc., based in Royal Palm Beach Florida (Hereinafter "Nu-Way"). Mr. Klusmeier holds a 15% interest in the company.  Mr. Klusmeier is an expert in the use of Hydroseed to grow grass and related issues.

25.　Plaintiff/Relator Jacqueline Klusmeier owns 85% of Nu-Way and is the President of the company.

26.　Nu-Way is in the business of providing Hydroseed materials and services and has worked on several of the sites as a subcontractor under prime contracts issued by the South Florida Water Management District ("SFWMD") for construction of portions of a water treatment project in the Everglades.

### B.　DEFENDANTS

27.　The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

28. Defendant, Astaldi Construction Corporation, holds contracts including, but not limited to, contracts for Project No. 00673101, the Wetlands Based Water Reclamation Project – Phase II, for at least $8,822,368.02.

29. Defendant, Lucas Marine Construction Co. also known as LMC Holdings, Inc, holds contracts including, but not limited to, contracts for the M-1 Canal Levee for at least $3,019,764.00. The Relator saw documentation with respect to this contract as part of his investigation but was unable to make copies of these contracts.

30. Defendant, Gulf Group, Inc. holds contracts including, but not limited to, contract number CN060040 for STA 2 Cell 4 Expansion Project with South Florida Water Management District. The contract total amount was $18,688,458.40 and was executed on 13 December 2005. The Contract's Project Description states that Gulf Group, Inc. is responsible for many parts of the project, including, but not limited to, "…the construction of approximately 52,000 linear feet of levee."

31. Defendant, Bergeron Land Development, Inc. South of 19612 SW 69th Pl., Pembroke Pines, Florida, 33332, holds contracts including, but not limited to, contract number C-E208 for the Construction of STA 2 for the amount of $25,258,680.93 and contract number C-E600 for STA 6 – Section 1 Construction for the amount of $1,900,948.00. While the execution and end dates on these contracts are more than six years old, the Relator directly observed work being conducted on these sites with construction equipment and personnel within the past six years, but is unsure of the specific contract vehicle to which this work was charged.

32.   Defendant, Shaw Environmental, Inc. a subsidiary of Shaw Group, Inc., holds contracts including, but not limited to, contract numbers C-E307 CO307-R4 and C-E307 CO307-R3 for STA 3/4 Interior Work. The total amount of these contracts was $33,456,901.05. The contracts were executed July 20, 2001 and were to end July 30, 2004.

33.   Defendant, Interlaken, Inc., holds contracts including, but not limited to, Contract Number CN060041 for the STA 5 Flow-Way 3 Project. The total amount of the contract is $12,903,000.00. This contract runs through September 30, 2007. Interlaken's contract requires conversion of approximately 2,560 Acres of prior agricultural sugar cane farm for use as a wetland treatment system. The Contract's Project Description states, "The work will include, but is not limited to the construction of canals, levees, flow control structures, degrading of existing roads and berms, and the filling of existing ditches and canals."

34.   Defendant, Gilbert Southern Corporation of 1011 Shotgun Road, Sunrise, Florida, 33326, a subsidiary of Kiewit Southern Corporation of 13630 NW 8th Street, Suite 225, Sunrise, Florida, 33325, hold contracts including, but not limited to, contract number C-E503 for STA 5 Construction for an amount of $10,582,796.43. While the execution and end dates on these contracts are more than six years ago, the Relator directly observed workers and construction equipment on this site within the past six years, but is unsure of the specific contract vehicle to which this work was charged.

35.   Defendant, Harry Pepper and Associates holds contracts including, but not limited to, Contract number CN060042 for the STA 6 – Section 2 Construction and

Section 1 Modification Project. The total amount of the contract is $23,460,167.00. The contract runs through September 30, 2007. The contract is for creation of an additional stormwater treatment section for STA 6 and states, "The work will include, but is not limited to, the construction of canals, levees, flow control structures, degrading of existing roads and berms, and the filling of existing ditches and canals." Defendant also holds contracts including, but not limited to, contract number C-E107 for the Construction of STA 1W for the amount of $19,006,465.18.  While the execution and end dates on these contracts are more than six years old, the Relator while working on an adjacent site personally observed trucks headed to and from this site and personnel and workers on the site  within the past six years but is unsure of the specific contract vehicle to which this work was charged.

36.     Defendant, Douglas N. Higgins, Inc. holds contracts including, but not limited to, contracts for the Nubbin Slough STA for a total contract amount of $8,863,768.96.

37.     Defendant, Ironhorse, LTD holds contracts including, but not limited to, contracts for the Grassy Island STA for a total contract amount of $2,872,797.00.

38.     Defendant, Atlantic Skanska, Inc. holds contracts including, but not limited to, contracts for the Ten Mile Creek Water Preserve for a total contract amount of $24,483,039.00.

39.     Defendant, Atlantic Civil, Inc. holds contracts including, but not limited to, contracts for STA 3/4, pump station G-370 and G372 levee.

40. Defendant, Palm Beach Grading, Inc. holds contracts including, but not limited to, contracts for the M-O Canal Levee for a total amount of $2,399,000.00.

41. Defendant, Palm Beach Aggregate holds contracts including, but not limited to, contracts for the L-8 Reservoir for a total amount of $217,581,500.00. The construction for this project, which is entirely a part of the federally funded effort to improve water quality is includes many levees which were to be built according to the specifications promulgated by the Army Corps and were designed to be able to hold water.

## II. FACTUAL BASIS OF ALLEGATIONS

## A. INTRODUCTION

42. The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

43. The Plaintiff/Relator, Gene Klusmeier is an expert on grass seed and growing grass and through the Relators' company, Nu-Way, has worked on several sites as a subcontractor under prime contracts with the South Florida Water Management District ("SFWMD") for the construction of a portion of a large Federally-funded water treatment project in the Everglades.

44. The Relators' own subcontracts to spread grass seed were part of the construction of levees in the federally funded water treatment project, which are part of the overall effort to improve the Everglades.

45. The sites Nu-Way worked on included a series of "cells," designed to hold massive amounts of water. Each cell was approximately one mile square and

holds water to a depth of eight feet.  Prime contracts included the building of several of the levees on the site.

46.   Through this work Mr. Klusmeier has expertise in growing grass and soil content.

47.   He also has specific knowledge of the structural importance of grass on levees and is intimately familiar with the specifications required by the contracts to build levees properly.

48.   Mr. Klusmeier personally inspected sites for which the above listed defendants are prime contractors.

49.   He discovered through personal observation that several sites of this federally funded water treatment project have been constructed with a knowing, willful, and reckless disregard for standard materials and construction specifications of contracts under this project.

50.   Materials used and the work performed on these sites has been so far below contract standards for this project as to pose a threat to the entire project area and create a potential hazard to the towns near the site.

51.   The work is so far below standard as to render the levees unfit for their intended purpose. They simply cannot safely contain water.

52.   The Relators have photographed these instances for documentation.

53.   The expenses to fund such projects are born principally by the Federal Government through funds administered by the South Florida Water Management District and there have been State of Florida funds expended as well.

54.   There has been no public disclosure of the allegations presented herein.

55.   The Relators, by way of personal observation, have direct and independent knowledge of these accounts of fraud. The Relators are the original source of all the allegations presented herein.

56.   Defendants listed above, constructed the levees listed above with a knowing, willful and reckless disregard for standard materials and construction specifications of the contracts for this federally funded project.

57.   Time is of the essence in this matter.

58.   Currently, the actual damages to the public "only" involve payments made to the above contractors under their contracts for construction in the area, for an approximate total of over $400 million and any costs involved in making the necessary improvements to the portions of the federally funded water treatment project for which defendants are responsible.

59.   Should any of the levees fail because of Defendants' substandard construction, several entire project sites, including additional federally funded construction, would be jeopardized by flooding.

60.   Such flooding could, in turn, pose a serious threat to the safety of the nearby towns and private property adjacent to the areas under construction.

**B.**   **BACKGROUND ON HYDROSEED AND GRASS IN CONSTRUCTION**

61.   The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above

62.   The Relators' company, Nu-Way, specializes in spreading hydroseed. Nu-Way uses a combination of grass seed, hydroseeding mulch, fertilizers, and water to spread the seed evenly over a wide area of construction.

63.   The purpose of spreading grass seed and growing grass on a levee is far more important than improving the aesthetics of the site. On a levee, the grass is also meant to help strengthen the construction.

64.   The use of improper materials and improper methods hampers many other aspects required for proper construction of levees including but not limited to compaction and compaction tests. The evidence, including Mr. Klusmeier's inspections, confirms that the amount of sand and rocks used to construct the levees would interfere with any true effort to compact the levees.   Mr. Klusmeier noted substantial erosion at the construction sites as well.

65.   The poor state of the topsoil and construction conditions could pose a substantial threat to the safety of the people of Florida and threaten to undermine the entire purpose of the Everglades project.

66.   The evidence compiled by Mr. Klusmeier's investigation demonstrates that the topsoil and construction conditions of sites listed above whom the above listed contractors were responsible for failed to meet the requirements of any contract the contractors would have had with the SFWMD for this project.

67.   Furthermore, the evidence shows that the Defendants created levees that were not suitable to contain water and are therefore not suited for their intended purpose.

## III.   CONTRACT REQUIRMENTS FOR TOPSOIL QUALITY AND DEPTH

68.   The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

69.    As a result of working as a subcontractor on the overall project, Nu-Way received contract material and specifications to be followed when building levees on the Project.

70.    These specifications were created by the Army Corps of Engineers and are similar, if not identical, for all levees in the project with respect to the quality of construction and materials included.

71.    Specifications for another federally funded project, the Herbert Hoover Dike, which were also promulgated by the Army Corps of Engineers, are similar or identical to the actual construction specifications for the defendants listed above and are referred to as *Model Specifications* herein.

72.    The Model Specifications designate the appropriate material which can be used for construction of, *inter alia*, levees.

73.    The Defendants named herein produced work that was far below what is required by Model Specifications. The materials used also violate the Model Specifications. The work produced by the Defendants was so far below what is required that the levees constructed are not fit for their intended purpose. The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

74.    The Model Specifications define the quality of the topsoil as:

> Topsoil shall be as defined in ASTM D 5268... Topsoil shall be free from slag, cinders, stones, lumps of soil, sticks, roots, trash or other material over a minimum 1½ inch diameter. Topsoil shall be free from viable plants and plant parts.

75.    The Subsection of the Model Specifications on *Surface Erosion Control Material*

states that a stable stand of grass must be established.  The Model Specifications

state:

> The Contractor shall be responsible for controlling/repairing erosion on all
> exposed surfaces throughout construction and until a stable stand of grass
> is established.

76.    The Model Specifications regarding the soil testing to be done for installing seed

require that:

> Delivered topsoil, existing soil in smooth graded areas, and stockpiled
> topsoil shall be tested in accordance with ASTM D 5268 and ASTM D
> 4972 for determining the particle size, pH, organic matter content, textural
> class, chemical analysis, soluble salts analysis, and mechanical analysis.
> Sample collection on site shall be random over the entire site. Sample
> collection for stockpiled topsoil shall be at different levels in the stockpile.
> The soil shall be free from debris, noxious weeds, toxic substances, or
> other materials harmful to plant growth. The test shall determine the
> quantities and type of soil amendments required to meet local growing
> conditions for the seed species specified.

77.    The Model Specifications regarding finished grade and topsoil for site preparation
require that:

> The Contractor shall verify that finished grades are as indicated on
> drawings, and the placing of topsoil, smooth grading, and compaction
> requirements have been complete in accordance with Section 02300
> EARTHWORK, prior to the commencement of the seeding operation.

78.    The *Tillage* specifications for site preparation state:

> Soil on slopes up to a maximum 3-horizontal–to-1-vertical shall be tilled
> to a minimum 4 inch depth. On slopes between 3-horizontal-to–1 vertical
> and 1-horizontal–to-1 vertical, the soil shall be tilled to a minimum 2 inch
> depth by scarifying with heavy rakes or other method....

> Areas compacted by construction operations shall be completely
> pulverized by tillage.  Soil used for repair of surface erosion or grade
> deficiencies shall conform to topsoil requirements. The pH adjuster,
> fertilizer and soil conditioner may be applied during this procedure.

79. The *Seed Establishment Period* specifications require satisfactory stand of grass plants, stating:

> Grass plants shall be evaluated for species and health when the grass plants are a minimum 1 inch high. A satisfactory stand of grass plants from the seeding operation shall be a minimum 20 grass plants per square foot. Bare spots shall be a maximum 9 inches square. The total bare spots shall not exceed 2 percent of the total seeded area.

80. The *Maintenance* specifications require the eradication of weeds, stating:

> Maintenance of the seeded areas shall include eradicating weeds, insects and diseases; protecting embankments and ditches from surface erosion; maintaining erosion control materials and mulch; Protecting installed areas from traffic; mowing; watering; and post fertilization.

81. The Relators' investigations show that the Defendants constructed levees using material and means which violated these and other sections of the Model Specifications. The resulting levees are not suitable to contain water and are therefore not suited for their purpose.

## IV.   THE RELATORS PERSONALLY OBSERVED DEFENDANTS' VIOLATIONS OF STANDARD CONTRACT REQUIREMENTS

82. The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

83. The Plaintiffs personally observed the knowing, willful and reckless disregard of project's specifications; in addition, the Plaintiffs personally observed that the Defendants' construction was so far below what is required as to make the construction unfit for its intended purposes as detailed below.

## A.   Astaldi Construction Corporation

84. The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

85. The Relators have personally observed that Astaldi Construction Corporation has constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

86. The Relator's company, Nu-Way Lawn was hired to provide hydroseeding services for this site in 2004.

87. While working on the site and thereafter, Mr. Klusmeier was able to personally observe the work performed by Astaldi as well as several of the other contractors whose sites bordered the work conducted by Astaldi.

88. He has reviewed the work by contractors herein continually.

89. Specifically, the Relators have observed that at the Wetlands Based Water Reclamation Project – Phase II, Astaldi Construction Corporation has constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations.

90. Astaldi Construction Corporation has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

91. Astaldi Construction Corporation has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling or repairing erosion on all exposed surfaces until a stable stand of grass was established.

92. Astaldi Construction Corporation has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

93. Astaldi Construction Corporation has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

94. Astaldi Construction Corporation has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

95. Astaldi Construction Corporation has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

96. Astaldi Construction Corporation has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

97. Astaldi Construction Corporations' use of improper materials and improper construction methods hampers many other aspects required for proper

construction of levees, including, but not limited to, compaction and compaction tests.

98. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

99. Moreover, Astaldi's work created levees that are not fit for their intended purpose. The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

**B. Lucas Marine Construction Co. and LMC Holdings, Inc.**

100. The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

101. The Relators have personally observed that Lucas Marine Construction Co. and LMC Holdings, Inc. have constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

102. Specifically, the Relators have observed that at the M-1 Canal Levee, Lucas Marine Construction Co. and LMC Holdings, Inc. have constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

103. Lucas Marine Construction Co. and LMC Holdings, Inc. have disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

104.   Lucas Marine Construction Co. and LMC Holdings, Inc. have disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling or repairing erosion on all exposed surfaces until a stable stand of grass was established.

105.   Lucas Marine Construction Co. and LMC Holdings, Inc. have disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

106.   Lucas Marine Construction Co. and LMC Holdings, Inc. have disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

107.   Lucas Marine Construction Co. and LMC Holdings, Inc. have disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

108.   Lucas Marine Construction Co. and LMC Holdings, Inc. have disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

109.   Lucas Marine Construction Co. and LMC Holdings, Inc. have disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

110.   Lucas Marine Construction Co. and LMC Holdings, Inc.'s use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees, including, but not limited to, compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

111.   Moreover, Lucas Marine Construction Co. and LMC Holdings, Inc. created levees that are not fit for their intended purpose. The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

## C.   Bergeron Land Development, Inc. South

112.   The Relators have personally observed that Bergeron Land Development, Inc. South has constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

113.   Specifically, the Relators have observed that at the Storm Water Treatment Area 2, STA6- Section 1 Construction, Bergeron Land Development, Inc. South has constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

114.   Bergeron Land Development, Inc. South has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

115.   Bergeron Land Development, Inc. South has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling or repairing erosion on all exposed surfaces until a stable stand of grass was established.

116.   Bergeron Land Development, Inc. South has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

117.   Bergeron Land Development, Inc. South has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

118.   Bergeron Land Development, Inc. South has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

119.   Bergeron Land Development, Inc. South has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more

abundant than the maximum allowed by the specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

120. Bergeron Land Development, Inc. South has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

121. Bergeron Land Development, Inc., South's use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees, including, but not limited to, compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

122. Moreover, Bergeron Land Development, Inc. created levees that are not fit for their intended purpose. The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

**D.    Gulf Group, Inc.**

123. The Relators personally observed that Gulf Group, Inc. constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

124. Specifically, the Relators observed that at the STA-2 Cell 4 Expansion Project, Gulf Group, Inc. constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

125. Gulf Group, Inc. has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most suitable

materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

126.   Gulf Group, Inc. has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling/repairing erosion on all exposed surfaces until a stable stand of grass was established.

127.   Gulf Group, Inc. has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

128.   Gulf Group, Inc. has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

129.   Gulf Group, Inc. has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

130.   Gulf Group, Inc. has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

131. Gulf Group, Inc. has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

132. Gulf Group, Inc.'s use of improper materials and improper methods hampers many other aspects required for proper construction of levees, including, but not limited to, compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

133. Moreover, Gulf Group, Inc. created levees that are not fit for their intended purpose. The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

**E.     Shaw Environmental, Inc.**

134. The Relators personally observed that Shaw Environmental, Inc. constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

135. Specifically, the Relators have observed that at STA-3 and STA-4, Shaw Environmental, Inc. constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

136. Shaw Environmental, Inc. has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

137.   Shaw Environmental, Inc. has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling/repairing erosion on all exposed surfaces until a stable stand of grass was established.

138.   Shaw Environmental, Inc. has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

139.   Shaw Environmental, Inc. has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

140.   Shaw Environmental, Inc. has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

141.   Shaw Environmental, Inc. has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

142.   Shaw Environmental, Inc. has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

143.   Shaw Environmental Inc.'s use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees, including, but not limited to, compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

144.   Moreover, Shaw Environmental, Inc. created levees that are not fit for their intended purpose.  The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

**F.**   **Gilbert Southern Corporation and Kiewit Southern Corporation**

145.   The Relators have personally observed that Gilbert Southern Corporation and Kiewit Southern Corporation have constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

146.   Specifically, the Relators have observed that at the Storm Water Treatment Area 5, Gilbert Southern Corporation and Kiewit Southern Corporation have constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

147.   Gilbert Southern Corporation and Kiewit Southern Corporation have disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

148.   Gilbert Southern Corporation and Kiewit Southern Corporation have disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling or repairing erosion on all exposed surfaces until a stable stand of grass was established.

149.   Gilbert Southern Corporation and Kiewit Southern Corporation have disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

150.   Gilbert Southern Corporation and Kiewit Southern Corporation have disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

151.   Gilbert Southern Corporation and Kiewit Southern Corporation have disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

152.   Gilbert Southern Corporation and Kiewit Southern Corporation have disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the Model Specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

153. Gilbert Southern Corporation and Kiewit Southern Corporation have disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

154. Gilbert Southern Corporation and Kiewit Southern Corporation's use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees, including, but not limited to, compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

155. Moreover, Gilbert Southern Corporation and Kiewit Southern Corporation created levees that are not fit for their intended purpose. The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

## G.    Interlaken, Inc.

156. The Relators personally observed that Interlaken, Inc. constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

157. Specifically, the Relators observed that at the STA-5 Flow-Way 3 Project, Interlaken, Inc. has constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

158. Interlaken, Inc. has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most suitable

materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

159. Interlaken, Inc. has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling/repairing erosion on all exposed surfaces until a stable stand of grass was established.

160. Interlaken, Inc. has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

161. Interlaken, Inc. has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

162. Interlaken, Inc. has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

163. Interlaken, Inc. has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the Model Specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

164. Interlaken, Inc. has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

165. Interlaken, Inc.'s use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees including but not limited to compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

166. Moreover, Interlaken Inc. created levees that are not fit for their intended purpose. The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

**G.**   **Harry Pepper and Associates**

167. The Relators have personally observed that Harry Pepper and Associates constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

168. Specifically, the Relators have observed that at STA-6 Sections 1 and 2, as well as at Storm Water Treatment Area 1 West, Harry Pepper and Associates has constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

169. Harry Pepper and Associates has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most

suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

170. Harry Pepper and Associates has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling/repairing erosion on all exposed surfaces until a stable stand of grass was established.

171. Harry Pepper and Associates has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

172. Harry Pepper and Associates has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

173. Harry Pepper and Associates has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

174. Harry Pepper and Associates has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the Model Specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

175. Harry Pepper and Associates has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

176. Harry Pepper and Associates' use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees including but not limited to compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

177. Moreover, Harry Pepper and Associates created levees that are not fit for their intended purpose.  The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

**I.**   **Douglas N. Higgins, Inc.**

178. The Relators have personally observed that Douglas N. Higgins, Inc. has constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

179. Specifically, the Relators have observed that at the Nubbin Slough STA, Douglas N. Higgins, Inc. has constructed levees without proper topsoil, without grass, and with weeds growing in the soil. *See* Exhibit 17, photos 19-22. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

180. Douglas N. Higgins, Inc. has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most

suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

181.   Douglas N. Higgins, Inc. has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling/repairing erosion on all exposed surfaces until a stable stand of grass was established.

182.   Douglas N. Higgins, Inc. has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

183.   Douglas N. Higgins, Inc. has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

184.   Douglas N. Higgins, Inc. has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

185.   Douglas N. Higgins, Inc. has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the Model Specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

186. Douglas N. Higgins, Inc. has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

187. Douglas N. Higgins, Inc.'s use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees including but not limited to compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

188. Moreover, Douglas N. Higgins Inc. created levees that are not fit for their intended purpose. The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

## J.    Ironhorse, LTD

189. The Relators have personally observed that Ironhorse, LTD has constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

190. Specifically, the Relators have observed that at the Taylor Creek, Grassy Island STA, Ironhorse, LTD has constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

191. Ironhorse, LTD has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most suitable

materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

192. Ironhorse, LTD has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling/repairing erosion on all exposed surfaces until a stable stand of grass was established.

193. Ironhorse, LTD has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

194. Ironhorse, LTD has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

195. Ironhorse, LTD has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

196. Ironhorse, LTD has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

197. Ironhorse, LTD has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

198. Ironhorse, LTD's use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees, including, but not limited to, compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

199. Moreover, Ironhorse, LTD created levees that are not fit for their intended purpose. The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

**K.   ATLANTIC SKANSKA, INC.**

200. The Relators have personally observed that Atlantic Skanska, Inc. has constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

201. Specifically, the Relators have observed that at the Ten Mile Creek Water Preserve, Atlantic Skanska, Inc. has constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

202. Atlantic Skanska, Inc. has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most

suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

203.   Atlantic Skanska, Inc. has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling/repairing erosion on all exposed surfaces until a stable stand of grass was established.

204.   Atlantic Skanska, Inc. has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

205.   Atlantic Skanska, Inc. has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

206.   Atlantic Skanska, Inc. has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

207.   Atlantic Skanska, Inc. has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

208.   Atlantic Skanska, Inc. has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

209.   Atlantic Skanska, Inc.'s use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees including but not limited to compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

210.   Moreover, Altantic Skanska, Inc. created levees that are not fit for their intended purpose.  The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

## L.   ATLANTIC CIVIL, INC.

211.   The Relators have personally observed that Atlantic Civil, Inc. has constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

212.   Specifically, the Relators have observed that at STA 3/4, pump stations G-370 and G-372, Atlantic Civil, Inc. has constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

213.   Atlantic Civil, Inc. has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most

suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

214. Atlantic Civil, Inc. has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling or repairing erosion on all exposed surfaces until a stable stand of grass was established.

215. Atlantic Civil, Inc. has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

216. Atlantic Civil, Inc. has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

217. Atlantic Civil, Inc. has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

218. Atlantic Civil, Inc. has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

219.    Atlantic Civil, Inc. has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

220.    Atlantic Civil, Inc. use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees including but not limited to compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

221.    Moreover, Atlantic Civil Inc. created levees that are not fit for their intended purpose.  The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

## M.    PALM BEACH GRADING, INC

222.    The Relators have personally observed that Palm Beach Grading, Inc. has constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

223.    Specifically, the Relators have observed that at the M-O Canal Levee, Palm Beach Grading, Inc. has constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

224.    Palm Beach Grading, Inc. has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most

suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

225. Palm Beach Grading, Inc. has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling or repairing erosion on all exposed surfaces until a stable stand of grass was established.

226. Palm Beach Grading, Inc. has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

227. Palm Beach Grading, Inc. has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

228. Palm Beach Grading, Inc. has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

229. Palm Beach Grading, Inc. has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

230.   Palm Beach Grading, Inc. has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

231.   Palm Beach Grading, Inc.'s use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees including but not limited to compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

232.   Moreover, Palm Beach Grading, Inc. created levees that are not fit for their intended purpose.  The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

## N.   PALM BEACH AGGREGATE, INC.

233.   The Relators have personally observed that Palm Beach Aggregate, Inc. has constructed levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

234.   Specifically, the Relators have observed that at the L-8 Reservoir, Palm Beach Aggregate, Inc. has constructed levees without proper topsoil, without grass, and with weeds growing in the soil. This demonstrates disregard for several of the Model Specifications, including, but not limited to, the following violations:

235.   Palm Beach Aggregate, Inc. has disregarded 02921A, Subsection 2.2 and 1.4.2 of the Model Specifications by not obtaining proper topsoil and not using the most

suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

236.   Palm Beach Aggregate, Inc. has disregarded Section 02921A, Subsection 2.8 of the Model Specifications by not controlling or repairing erosion on all exposed surfaces until a stable stand of grass was established.

237.   Palm Beach Aggregate, Inc. has disregarded Section 02921A, Subsection 3.1.4 of the Model Specifications by not providing proper topsoil and not using the most suitable materials, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

238.   Palm Beach Aggregate, Inc. has disregarded Section 02921A, Subsection 3.2.1 of the Model Specifications by having improperly placed topsoil, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

239.   Palm Beach Aggregate, Inc. has disregarded Section 02921A, Subsection 3.2.3 of the Model Specifications by not properly tilling the soil, as evidenced by the presence of sand that could not even be properly tilled instead of suitable topsoil that meets the specifications for topsoil quality.

240.   Palm Beach Aggregate, Inc. has disregarded Section 02921A, Subsection 3.9.2 of the Model Specifications by not ensuring the presence of a satisfactory stand of grass plants and by allowing bare spots larger and more abundant than the maximum allowed by the specifications, as evidenced by the presence of sand and weeds and the lack of properly growing grass.

241.   Palm Beach Aggregate, Inc. has disregarded Section 02921A, Subsection 3.9.3 of the Model Specifications by not adequately eradicating weeds, resulting in the weakening of the soil and levee.

242.   Palm Beach Aggregate, Inc.'s use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees including but not limited to compaction and compaction tests. The amount of sand and rocks used on the site would interfere with any true effort to compact the levees constructed.

243.   Moreover, Palm Beach Aggregate, Inc. created levees that are not fit for their intended purpose.  The Defendants ultimately built levees which will erode and will not hold water and, therefore, can not really be called levees.

## V. VIOLATIONS OF THE FALSE CLAIMS ACT, 31 USC §§ 3729 *et. seq*
## COUNT I

244.   The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

245.   The Defendants billed and caused charges to be billed for the construction of levees which were constructed with a knowing, willful and reckless disregard for standard materials and construction specifications.

246.   Each of the above-named Defendant contractors and their officials have caused the submission of false claims in violation of 31 U.S.C. § 3729, by directly or indirectly causing the United States to be billed for construction which violated specifications for proper levee construction in the federally funded sites.

247. As a result of Defendants' actions, the United States has paid directly or indirectly false claims and spent millions of dollars pursuant to contracts issued as a part of the federally funded project to improve water quality in the Everglades.

248. Specifically, the Defendants constructed levees without proper topsoil, without grass, and with weeds growing in the soil.

249. This demonstrates disregard for construction specifications for building levees properly.

250. The use of improper materials and improper construction methods hampers many other aspects required for proper construction of levees, including, but not limited to, compaction and compaction tests as required.

251. The work is so far below standards as to render the levees unfit for their intended purpose. They simply cannot safely contain water.

252. Therefore, damages to the Government include, but are not limited to, the full value of any such fraudulent claims.

253. Each and every such fraudulently billed claim is also subject to a Civil fine under the False Claims Act under which each falsely coded case represents a false claim to the government subject to a fine of five to ten thousand dollars ($5,000 – $10,000).

## COUNT II

254. The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

255. Defendants have caused the submission of false claims in violation of 31 U.S.C. § 3729, by directly or indirectly causing the United States to be billed for the

construction of levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

256. Specifically, the Defendants did not control or repair erosion on all exposed surfaces until a stable stand of grass was established.

257. This demonstrates disregard for construction specifications for building levees properly.

258. The disregard of the construction specifications hampers many other aspects required for proper construction of levees, including, but not limited to, compaction and compaction tests as required.

259. The work is so far below standards as to render the levees unfit for their intended purpose. They simply cannot safely contain water.

260. Therefore, damages to the Government include, but are not limited to, the full value of any such fraudulent claims.

261. Each and every such fraudulently billed claim is also subject to a Civil fine under the False Claims Act under which each falsely coded case represents a false claim to the government subject to a fine of five to ten thousand dollars ($5,000 – $10,000).

## COUNT III

262. The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

263. Defendants have caused the submission of false claims in violation of 31 U.S.C. § 3729, by directly or indirectly causing the United States to be billed for the

construction of levees with a knowing, willful and reckless disregard for the standard materials and construction specifications of the contracts for a federally funded project.

264.   Specifically, the Defendants had improperly placed topsoil.

265.   This demonstrates disregard for construction specifications for building levees properly.

266.   The improper placement of topsoil hampers many other aspects required for proper construction of levees including but not limited to compaction and compaction tests as required.

267.   The work is so far below standards as to render the levees unfit for their intended purpose. They simply cannot safely contain water.

268.   Therefore, damages to the Government include, but are not limited to, the full value of any such fraudulent claims.

269.   Each and every such fraudulently billed claim is also subject to a Civil fine under the False Claims Act under which each falsely coded case represents a false claim to the government subject to a fine of five to ten thousand dollars ($5,000 – $10,000).

## COUNT IV

270.   The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

271.   Defendants have caused the submission of false claims in violation of 31 U.S.C. § 3729, by directly or indirectly causing the United States to be billed for the construction of levees with a knowing, willful and reckless disregard for the

standard materials and construction specifications of the contracts for a federally funded project.

272.    Specifically, the Defendants did not properly till the soil.

273.    This demonstrates disregard for construction specifications for building levees properly.

274.    The failure to till the soil properly hampers many other aspects required for proper construction of levees, including, but not limited to, the inability to grow grass properly which would strengthen a levee.

275.    The work is so far below standards as to render the levees unfit for their intended purpose. They simply cannot safely contain water.

276.    Therefore, damages to the Government include, but are not limited to, the full value of any such fraudulent claims.

277.    Each and every such fraudulently billed claim is also subject to a Civil fine under the False Claims Act under which each falsely coded case represents a false claim to the government subject to a fine of five to ten thousand dollars ($5,000 – $10,000).

## COUNT V

278.    The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

279.    Defendants have caused the submission of false claims in violation of 31 U.S.C. § 3729, by directly or indirectly causing the United States to be billed for the construction of levees with a knowing, willful and reckless disregard for the

standard materials and construction specifications of the contracts for a federally funded project.

280.   Specifically, the Defendants did not ensure the presence of a satisfactory stand of grass plants.

281.   This demonstrates disregard for construction specifications for building levees properly.

282.   The Defendants' failure to ensure the presence of satisfactory stand of grass plants hampers many other aspects required for proper construction of levees and provides for a weaker levee than contemplated.

283.   The work is so far below standards as to render the levees unfit for their intended purpose. They simply cannot safely contain water.

284.   Therefore, damages to the Government include, but are not limited to, the full value of any such fraudulent claims.

285.   Each and every such fraudulently billed claim is also subject to a Civil fine under the False Claims Act under which each falsely coded case represents a false claim to the government subject to a fine of five to ten thousand dollars ($5,000 – $10,000).

## COUNT VI

286.   The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

287.   Defendants have caused the submission of false claims in violation of 31 U.S.C. § 3729, by directly or indirectly causing the United States to be billed for the construction of levees with a knowing, willful and reckless disregard for the

standard materials and construction specifications of the contracts for a federally funded project.

288.   Specifically, the Defendants did not adequately eradicate weeds.

289.   This demonstrates disregard for construction specifications for building levees properly.

290.   The disregard of the responsibility to eradicate weeds hampers many other aspects required for proper construction including proper grass growth and topsoil placement and encourages erosion.

291.   The work is so far below standards as to render the levees unfit for their intended purpose. They simply cannot safely contain water.

292.   Therefore, damages to the Government include, but are not limited to, the full value of any such fraudulent claims.

293.   Each and every such fraudulently billed claim is also subject to a Civil fine under the False Claims Act under which each falsely coded case represents a false claim to the government subject to a fine of five to ten thousand dollars ($5,000 – $10,000).

## COUNT VI

294.   The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

295.   Defendants have caused the submission of false claims in violation of 31 U.S.C. § 3729, by directly or indirectly causing the United States to be billed for the construction of levees with a knowing, willful and reckless disregard for the

standard materials and construction specifications of the contracts for a federally funded project.

296. The Defendants disregarded construction specifications; even in the absence of such specifications, they disregarded their responsibility for building levees which would be fit for their intended purpose.

297. The disregard of the responsibility to build levees properly resulted in work so far below standards as to render the levees unfit for their intended purpose. They simply cannot safely contain water.

298. Therefore, damages to the Government include, but are not limited to, the full value of any such claim for work under contracts to build such levees.

299. Each and every such fraudulently billed claim is also subject to a Civil fine under the False Claims Act under which each falsely coded case represents a false claim to the government subject to a fine of five to ten thousand dollars ($5,000 – $10,000).

## COUNT VI

300. The allegations contained in the above paragraphs are hereby re-alleged and set forth fully as above.

301. This is a qui tam action brought by Plaintiffs/Relators and the State of Florida for treble and/or statutory damages and penalties under the False Claims statute enacted by State of Florida, § 68.081, *et seq.*, Fla. Stat. (the "Florida False Claims Act").

302. Defendants violated the laws of the State of Florida by engaging in the fraudulent and illegal practices described herein.

303. Defendants knowingly caused numerous false claims to be made and presented to the State of Florida, by Defendants' violation of federal and state laws, and the State of Florida was not aware of the Defendants' fraudulent and illegal practices, and paid the claims submitted by the Defendants.

304. Compliance with applicable federal and state laws was an implied and express condition of payment of claims submitted to the State of Florida connection with the Defendants' fraudulent and illegal practices.

305. Had the State of Florida known that Defendants were violating federal and state laws, they would not have paid the claims submitted in connection with Defendants' fraudulent and illegal practices.

306. As a direct and proximate result of Defendants' conducts the State of Florida has been damaged in an amount far in excess of millions of dollars, exclusive of interest.

307. Plaintiffs/Relators are private persons with direct and independent knowledge of the allegations raised herein who have brought this action pursuant to the Florida False Claims Act, §68.081, *et. seq.*, Fla. Stat., providing for *qui tam* recoveries thereunder on behalf of themselves and the State of Florida.

308. This Court is requested to accept pendent and supplemental jurisdiction of these related state and local claims as they are predicated on the same facts as the Federal claims raised herein, and merely assert separate damages awardable to the State of Florida and Plaintiffs/Relators under the above-referenced laws of the State of Florida.

## PRAYER FOR RELIEF

WHEREFORE, Jacqueline and Gene Klusmeier, on behalf themselves, the United States Government and the State of Florida, pray:

a) That this Court enter a judgment against the Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendant's misrepresentation and poor construction methods, use of substandard material and any other violations the Defendants committed pursuant to work contracted for by the Defendants as detailed in counts and allegations above plus a civil penalty of $5,000 to $10,000 for each violation of 31 U.S.C. § 3730 and a civil penalty for each such false claim submitted to the State of Florida, including, but not limited to, each specification violation, and the costs of this action, with interest, including the cost to the United States Government for its expenses related to this action.

b) That this Court enter a judgment against the Defendants in an amount equal to three times the amount of damages the United States Government has sustained based on the full amount the Defendants charged for work under contracts for constructing levees which, upon information and belief, even at this time, are not up to the specifications and/or are not fit for the purpose they were designed, plus a civil penalty of $5,000 to $10,000 for each violation of 31 U.S.C. § 3730, including, but not limited to, each specification violation, and the costs of this action, with interest, including the cost to the United States Government for its expenses related to this action.

c) That pursuant to Count VI this Court enter a judgment against the Defendants in an amount equal to three times the amount of damages the State of Florida has sustained because of Defendants' misrepresentations and poor construction methods, use of substandard material and any other violations the

Defendants committed pursuant to work contracted for by the Defendants as detailed in counts and allegations above plus, a civil penalty of $5,500 to $11,000 for each violation of § 68.081 *et. seq.*, Fla. Stat., including, but not limited to, each specification violation, and the costs of this action, with interest, including the cost to the United States Government for its expenses related to this action.

d) That this Court enter a judgment against the Defendants in an amount equal to three times the amount of damages the State of Florida has sustained based on the full amount the Defendants charged for work under contracts for constructing which, upon information and belief, even at this time, are not up to the specifications and/or are not fit for the purpose they were designed, plus a civil penalty of $5,500 to $11,000 for each violation of § 68.081 *et. seq.*, Fla. Stat., including but not limited to, each specification violation, and the costs of this action, with interest, including the cost to the United States Government for its expenses related to this action.

e) That the Plaintiffs/Relators be awarded punitive damages in an amount to be determined by jury which shall dissuade the Defendants and others from similar action;

f) That the Relators be awarded all costs incurred in bringing this action, including reasonable attorney's fees;

g) That in the event the United States Government continues to proceed with this action, the Plaintiffs/Relators be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action under the Federal False Claims Act, 31 U.S.C §§ 3729 *et. seq.*;

h) That in the event that the United States Government does not proceed with this action, the Plaintiff/Relators be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be not

less than 25% nor more than 30% of the proceeds of the action or settlement of any claims under the Federal False Claims Act, 31 U.S.C. §§ 3729 *et. seq.*;

i)   That in the event the State of Florida continues to proceed with this action, the Plaintiffs/Relators be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action under the Florida False Claims Act, § 68.081, *et. seq., Fla. Stat.* ;

j)   That in the event that the State of Florida does not proceed with this action, the Plaintiffs/Relators be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be not less than 25% nor more than 30% of the proceeds of the action or settlement of any claims under the Florida False Claims Act, § 68.081, *et. seq., Fla. Stat.*;

k)   That the Plaintiffs/Relators be awarded pre-judgment interest;

l)   That a trial by jury be held on all issues;

m)  That the United States Government, the State of Florida, and the Plaintiffs/Relators receive all relief both at law and at equity, to which they may reasonably appear entitled.

## JURY TRIAL DEMANDED

Plaintiffs/Relators hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

WEBSTER, FREDERICKSON,
HENRICHSEN, CORRIEA & PUTH
P.L.L.C.

Neil L. Henrichsen
Florida Bar No.: 0111503
Helen H. Albee
Florida Bar No.: 987247
1648 Osceola Street
Jacksonville, Florida 32204
(904) 381-8183
Fax: (904) 381-8191
Nhenrichsen@wfhcplaw.com
Halbee@wfhcplaw.com

Anthony C. Munter
KOHN, KOHN & COLAPINTO, LLP
3233 P Street, N.W.
Washington, D.C. 20007
TM@kkc.com

Attorneys for Plaintiffs/Relators
Jacqueline and Gene Klusmeier

**CIVIL COVER SHEET**

≈JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

United States of America, ex rel., Gene Klusmeier and Jacquiline Klusmeier

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Helen H. Albee, Esquire
Webster, Fredrickson, Henrichsen, Correia & Puth, P.L.L.C.
1648 Osceola St., Jacksonville, FL 32204
(904) 381-8183

### DEFENDANTS

Astaldi Construction Co., et al.

07-22710

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

CIV
IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED

Attorneys (If Known)

ASC   TURNOFF   MAGISTRATE JUDGE

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☑ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

INTAKE
OCT 7 2007
INTAKE
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO

JUDGE    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Complaint filed under seal pursuant to 31 U.S.C. Section 3730(b)(2)

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE 10/11/2007

FOR OFFICE USE ONLY

AMOUNT 350.    RECEIPT # 968294    IFP

(Rev. 06/2005)Sealed Document Tracking Form

# UNITED STATES DISTRICT COURT
## Southern District of Florida

Case Number: _____

United States of America, ex
rel., Gene Klusmeier and
Jacquiline Klusmeier

Plaintiff

**07-22710**

**Sealed**

MAGISTRATE JUDGE
TURNOFF

v.

Astaldi Constr. Co., et al.

Defendant

**CIV - GOLD**

## SEALED DOCUMENT TRACKING FORM

*Party Filing Matter Under Seal*

Name: Helen H. Albee, attorney for Plaintiffs

Address: 1648 Osceola St., Jacksonville, FL 32204

Telephone: 904 381-8183

On behalf of (select one):   ☒ Plaintiff          ☐ Defendant

Date sealed document filed:  10/11/2007

If sealed pursuant to statute, cite statute:  31 U.S.C. Section 3730(b)(2)

If sealed pursuant to previously entered protective order, date of order and docket entry number: _____

The matter should remain sealed until:

☐ Conclusion of Trial                    ☐ Arrest of First Defendant
☐ Case Closing                          ☐ Conclusion of Direct Appeal
☒ Other:  see 31 U.S.C. Section 3730(b)
☐ Permanently.  Specify the authorizing law, rule, court order:

The moving party requests that when the sealing period expires, the filed matter should be (select one):

☒ Unsealed and placed in the public portion of the court file          ☐ Destroyed
☐ Returned to the party or counsel for the party, as identified above

Attorney for: Plaintiffs